Thank you. Good morning. Mary, would you call the first case, please? Case number 13-1122, Tony Johnson v. County of Cook. All right. Could I have counsel who are going to present to approach the podium and identify yourselves, please? Good morning, Your Honor. Carolyn Daly-Scott on behalf of the plaintiff epilogue. Bill Reagan on behalf of the Cook County station attorneys, on behalf of Cook County, Dr. Bishof and Dr. Benko, and the defendants at the lease. All right. Thank you very much. We'll have 15 minutes per side, and this is the appellant. I want to reserve some time for rebuttal. If I could reserve five minutes for rebuttal, Your Honor. Very well. All right. Thank you. When you're ready. May it please the court, counsel. My name is Carolyn Daly-Scott on behalf of plaintiff appellant. The Tort Immunity Act is in derogation of common law actions against local public entities and must be strictly construed against the party asserting it here at Cook County. This case is about negligent treatment. They had the right diagnosis. They diagnosed a back and buttock contusion from trauma, but the treatment of this diagnosis was negligent. When you have a diagnosis like this, you have to treat the patient in a certain manner. You have to immobilize the patient. You have to stabilize the spine and back. Is this for the spinal injury or for the injury, the misdiagnosed injury? The diagnosed injury. They had a diagnosis of back and buttock contusion from trauma. Did your doctor testify that the treatment that was provided for the back spasms was in deviation of the standard of care? Yes. The treatment that was rendered by the defendants for the back buttock contusion related to trauma deviated from the standard of care. It was negligent treatment. For back spasms? For the back buttock contusion, which in addition to the muscle spasms, the back buttock contusion was one diagnosis as well as the muscle spasms. The defendant doctors testified to that and that was in the medical records that that was the diagnosis. Where in the record did the doctors or the plaintiff, I need to have the citations to the record, where they testified that the treatment for the misdiagnosed spasms, that the doctors actually deviated from the standard of care for back spasms? For the back buttock contusion. Yes, contusions, spasms. I just need to know where in the record the doctors testified that the treatment provided by the doctors at the hospital was a deviation of the standard of care for that particular diagnosis. Dr. Upton testified at pages C2596 of the record saying that they failed to immobilize this patient and that that was a deviation, that that was negligent treatment for the back buttock contusion from trauma. This is a patient that came in from a traumatic fall diagnosed with a back buttock contusion and Dr. Corey and Dr. Upton testified that the patient should have been immobilized, their spine and back should have been stabilized, they should have been given high dose steroids. All right, and you're not saying that this has anything to do with the diagnosis of a spinal injury, the misdiagnosis of a spinal injury? Correct. All right. This has to do with the back buttock contusion diagnosis. They began treatment of that. There is no dispute that there was treatment of that diagnosis, the back buttock contusion. Their treatment was negligent. Let me ask you this, you know, just to make it very simple. The diagnosis here was a soft tissue injury, correct? The diagnosis was back buttock contusion from trauma. That's a soft tissue injury, isn't it? It's considered a soft tissue injury. There was no testimony that it was considered soft tissue. And in actuality, there was bony pathology here. Correct. So in their diagnosis of soft tissue injury, what did they do negligently? They had a patient who came in with a traumatic fall with a diagnosed back buttock contusion. They began to treat her. Their treatment was negligent in failing to immobilize her and permitting her to sit up, to walk around. Well, I think the law tells us that the only way you can get around the immunity is for negligent treatment of the diagnosis that has been made. What treatment that was given to this patient was negligence? The treatment in the law under American National Bank, also the omission of treatment. Once treatment has been prescribed and begun, the omission of treatment is also not immune. And that falls within treatment. In this case, once treatment was prescribed and began for this patient, which there is no dispute that this patient was treated for the back and buttocks contusion, the failure to immobilize her, the allowing her to stand up, to walk around. You see, we're talking about apples and oranges here. And what I'm saying is this, that if this was a soft tissue injury, the treatment that was given would have been appropriate, would it not? It would not have been appropriate. Why? If it was a soft tissue injury. It would not have been appropriate because this is a person who came in from a traumatic fall. They had to ensure, as Dr. Upton and Dr. Corey testified, they had to immobilize the spine. Permitting her to sit up, to move around, to walk around, forcing her to stand up and letting her fall to the ground caused swelling. It caused harm to this patient. It caused swelling within the spinal cord. Had she been immobilized, that would not have occurred. Permitting her to move around and failing to immobilize her, failing to give her high-dose steroids, failing to order an MRI, that's all negligent treatment. In doing their exams, in treating her in their exams after they began treatment, and under American National Bank, further exams constitute treatment for the purposes of immunities. The exams and having her sit up, having her stand up, having her walk to the bathroom to give a urine sample, that's all negligent treatment. According to Dr. Upton and Dr. Corey's testimony, she should not have been permitted to do any of that. If your description of the record is accurate, I perhaps could agree. But it's my understanding that Dr. Corey's testimony was presented in the context of a failure to diagnose a spinal injury and that he testified, basically, that in light of the actual injury, the spinal injury, spinal cord contusion, it was his opinion that the initial medical screening, including her failure to schedule an MRI, fish-offs, a physical exam of the plaintiff were inadequate and below the standard of care as plaintiff presented with an obvious spinal cord injury that should have been diagnosed. Now, you've suggested this morning that the testimony is otherwise, that both of the experts testified that the treatment that was provided was negligent in terms of a, as Justice Gordon has described, a soft tissue injury. And you're suggesting that they testified that an MRI should have been done in light of a soft tissue injury? Is that what they said? They testified that a person, Dr. Upton specifically testified that when you have a person come in from a traumatic fall with a back and buttocks contusion, as this plaintiff did, you have to immobilize the patient. You have to stabilize the spine and back. And here again, Dr. Upton said, again, I believe his testimony is in the context of a misdiagnosis, in which he said, based upon a review of plaintiff's medical records and his examination of plaintiff, she had suffered a contusion of the spinal cord as a result of her fall, and after discussing those symptoms and signs, Dr. Upton said he didn't know how Dr. Bischoff could even begin to suggest that plaintiff's numbness was due to muscle spasm, and he found it to be nonsense, and he opined that Bischoff didn't do the appropriate screening evaluation to determine whether or not a spinal cord injury existed, and she should have made a diagnosis of a spinal cord injury. Then he goes on to say that the failure to order an MRI, to request a neurological opinion, to failure to administer steroid, you know, prednisone, methyl prednisone, and the failure to immobilize the plaintiff was a deviation of the standard of care for the condition that she had, that being a spinal injury. Well, the condition that she had and that she was diagnosed with was the back and buttock contusion. They treated her for that. Their treatment was negligent and caused her harm. Well, if you're accurate about that, and if the record does show this kind of testimony, I think that that's a valid point. Then the treatment for the misdiagnosis, if it's negligent, then they are liable, if, of course, all the elements are established. But it seems to me that there's a big contest here between the parties, whether the doctors that you called as experts gave opinion testimony that their treatment for the back spasm, buttock spasm, was negligent as opposed to the misdiagnosis and then treatment that was otherwise appropriate for that was not appropriate for a spinal cord injury. So I think that's the whole nub here. As Dr. Upton testified, and he gave an example in his deposition, when you have somebody injured on the football field and you have potentially a back injury, the first thing you do is immobilize the patient. This is a patient who came in with a back injury. She had a back and buttock contusion. We know that. She was diagnosed with that. They were negligent in their treatment by failing to immobilize her, stabilize her spine, and also forcing her to stand up, forcing her to sit up for examinations, having her walk to the bathroom to give a urine sample after they had begun treating her. Let me ask you this. Under this notion that they're negligent in the treatment of the misdiagnosis, is the plaintiff seeking damages for the treatment of the misdiagnosis, or is she rather seeking damages for a misdiagnosis than mistreatment for the misdiagnosis, and that that misdiagnosis and mistreatment caused her further damages for the spinal cord injury? The plaintiff is not seeking treatment for a misdiagnosis. It is based upon the diagnosis that they made of a back and buttock contusion from trauma and the negligent treatment of that diagnosis, which caused this plaintiff harm. Their negligent treatment, she walked into the ER that day at Schroeder. She walked in with these complaints, and due to their negligent treatment, she was unable to walk out. She was taken out in a wheelchair, had to be helped out, carried in by her boyfriend and an orderly from the hospital into their vehicle. Due to their negligent treatment of their diagnosed condition, which was the back and buttocks contusion related to trauma, their negligent treatment caused this plaintiff harm, and that is the basis of plaintiff's claim here. You know, what's different about this case than any other case is the fact that here in this emergency room, they didn't take this patient seriously, did they? They did not, and that is in part. But actually what they should have done is to prescribe bed rest and put her in the hospital. Correct. They should have stabilized this patient. They should have prevented her from moving. Instead, they're telling this patient that she's lying, that she's faking, get out of here. You know, we don't know what you're up to. You're doing yoga poses. They're forcing her to stand up and dropping this plaintiff on the ground. They were negligent in their treatment of this plaintiff, and they wholly failed to take this plaintiff seriously. They were negligent in the misdiagnosis. They misdiagnosed, and their treatment of that misdiagnosis was negligent. There is not a misdiagnosis. We are not claiming misdiagnosis. You're not claiming a misdiagnosis? No, because a misdiagnosis is something that the Tort Immunity Act relates responsibility for. So you're not claiming a misdiagnosis? Correct. There is no claim of misdiagnosis. They were claiming that the diagnosis that they made, which is a back and buttock contusion related to trauma that this plaintiff presented with, that they negligently treated that condition that they diagnosed. They diagnosed that condition. They began treatment for that condition. Once they begin treatment, they are not immune, under the Tort Immunity Act, American National Bank, and the Mills case, for any subsequent treatment, including further diagnostic exams, including omissions of treatment. So it is not, we are not. I think that's an overly broad reading of the cases to say what you just said. To say that if there's a misdiagnosis, and let's assume for purposes of argument, we have a misdiagnosis, and we then have the negligent treatment of that misdiagnosis. Under those circumstances, I think you would have a claim. But if you have a misdiagnosis, and then you have what is otherwise treatment that is not a deviation from the standard of care, and the patient has some other diagnosis, that the Tort Liability Act relieves liability for non-negligent treatment of the wrong diagnosis. Would you agree with that proposition or not? I would say that's completely distinguishable from the case at hand. We have a diagnosis, and our claim is not that they treated the, that there's a misdiagnosis or they weren't treating. Our claim is that their treatment of their diagnosis, which there's no dispute on their diagnosis, it was a back and buttock contusion related to trauma. That that treatment of that, which they prescribed at Schroeder, was negligent, and that negligent treatment caused this plaintiff harm. Do you think that's how, not that we really care how the trial judge came to the conclusion, because we're reviewing this dismissal de novo. But is that how the trial judge interpreted this, or did she in fact say that the experts are not suggesting the negligent treatment of the misdiagnosis? She misapplied the facts in this case, respectfully, and determined this was a misdiagnosis case. She wholly ignored the criticisms, wholly ignored the evidence in this case, that our cause of action is for the negligent treatment of the diagnosed condition. Our cause of action is not for a negligent treatment of a spinal cord condition that was not diagnosed. Our cause of action is for the negligent treatment of the back and buttocks contusion that was diagnosed by the doctors at Schroeder Hospital, and that was then negligently treated, and caused the plaintiff harm. In addition to the tort immunity... Doesn't your theory that you're putting forward here today assume that the doctors recognized in their initial diagnosis that there were neurological injury symptoms? Respectfully, no, Your Honor. You have a patient coming in with a back injury related to a traumatic fall. The doctors, and Dr. Upton testified to this, that the first thing you do, you stabilize this patient. You make sure this patient's not moving around to protect the spine and the back. So they failed to do that. Their treatment was negligent. They provided her with pain medication, and then their subsequent examinations, having her move around, forcing her to stand up and dropping her, that is all negligent treatment. That's not what you should do to a patient who walks in with a back injury, which this woman had and which was diagnosed. In addition to the trial court's error in granting summary judgment on tort immunity, the trial court also erred in granting summary judgment on the EMTALA provision. EMTALA preempts state and local laws that directly conflict with its requirements. The Tort Immunity Act is in direct conflict in that it would immunize doctors from conducting a medical screening under EMTALA. The trial court wholly disregarded the evidence in this case when it held there was no evidence to support a violation of EMTALA with regard to whether there was an appropriate screening examination. There was testimony from Dr. Corey which clearly set forth defendant's violations of EMTALA. These opinions have not been stricken or held to be invalid in any way. As far as that, did the doctors, again, did the doctors opine that the treatment that she received was different or was inadequate based on other patients who had been treated differently? And is that a requirement? Dr. Bancroft, to address the first portion of your question, Dr. Bancroft testified at page C2660 through 2661 of the record that it was his custom and practice to do a neurologic exam and document a neurologic exam prior to discharging a patient and that he did not recall doing a neurologic exam of this patient prior to discharge and he did not recall, and he did not in fact document a neurologic exam. He clearly treated this patient different than other patients he would have and he admitted that it was his standard of care to do that, yet he didn't do it with this patient. Furthermore, there are questions of fact. And furthermore, under Coast County's own EMTALA policy as well as the EMTALA statute, a medical screening is a process engaged in until an emergency medical condition has been diagnosed or ruled out. They did not diagnose or rule out an emergency medical condition with this plaintiff. The trial court's determination that the plaintiff did not have an emergency medical condition was unsupported by the record. No one testified to that. There was no evidence throughout this record that this plaintiff did not have an emergency medical condition. The plaintiff obviously had an emergency medical condition for which she came to the emergency department at Stroger for. Her condition fits squarely within both EMTALA and the Cook County's definition of an emergency medical condition. She had severe pain and the absence of immediate medical attention placed her health in serious jeopardy and resulted in serious impairment to her bodily functions. She came in as a result of a traumatic fall with a back injury. The defendants violated the EMTALA statute and they violated their own EMTALA policies by failing to give her an appropriate medical screening. Again, I want you to reference back. You did say that Dr. Bankoff admitted that he treated her differently than he had treated other patients with the same injury. Where is that in the record? At page C2660-2661, Dr. Bankoff testified that it was his custom and practice with patients such as this, such as the plaintiff, who had a back buttock contusion, which is what he diagnosed this plaintiff with, to do a neurologic exam and document that neurologic exam prior to discharge. He did not do that in this patient. There is no documentation of it. He had no recollection of it. At a minimum, that creates a question of fact whether this patient was treated differently than other patients. We don't have, because of HIPAA laws, we don't have the benefit of getting all the plaintiffs, all the other patients' records that come in for back injuries to come down. Is that testimony enough to raise the question of back? I think that... Under EMTALA? I believe so, yes. And what do you base that on? What a case or your own interpretation, or there wasn't any medical, any other doctor that said that this treatment was different than all the others that had been treated for the contusions? Well, he was the discharging physician. Yes, I understand. He testified that this was his custom and practice, so I think his testimony alone is sufficient. In addition to Dr. Corey's testimony of the violations of EMTALA here, and if you look at Cook County's own policy on EMTALA, they didn't fulfill their duties under EMTALA. They didn't complete a medical screening exam for this patient. They didn't diagnose or rule out an emergency medical condition. Is there a case authority that suggests that the issue of whether or not EMTALA was violated is to be decided under negligence and medical malpractice theories of recovery in terms of the... It is not to be decided under negligence and medical malpractice theories of recovery. It is to be decided under the statute whether or not this patient was treated appropriately under the statute, whether or not this patient was given an appropriate medical screening examination. How do you get that without sufficient medical testimony? How do you reach that point? Your Honor, respectfully, there was testimony in this case sufficient. Dr. Corey opined to it. Dr. Bancroft provided us with this information. The plaintiff and her boyfriend testified to the way she was treated in this case. She was told she was lying. She was forced to stand up when she said she couldn't. She was dropped. Her boyfriend begged for treatment for her, and they wholly denied her treatment. This certainly is not the way that all patients with back injuries who come into Stroger are treated, that a patient is told that they're lying when they're complaining of back injuries and that they're told to get out of here. I don't know now not to diminish anything you're saying, but I'm not sure that there's testimony in the record to this regard. For the doctor to say he didn't do a neurological exam doesn't really answer every question, and certainly I'm not sure that's going to support the interpretation of EMTALA, as you're indicating today. I'm not saying that the question of how they treated her, I'm not sure that answers the statutory requisites. Dr. Corey's expert testimony on this matter and Dr. Bankoff's testimony together both clearly set forth a violation of EMTALA and a violation of the Cook County's own medical screening process under EMTALA, and I think at a minimum it creates a question of material fact that would preclude summary judgment. In addition, there is the negligent infliction of emotional distress case. That's right. Let's talk about that. Is that actually a separate claim or is that really just a measure of damages? That is a separate claim. This is a direct victim. No physical injury is necessary for this plaintiff. She may bring a negligent and did bring a negligent infliction of emotional distress claim. For the injuries she suffered based upon the emotional distress she suffered as a result of the defendant's treatment of her. This is not due to their misdiagnosis of her. It was due to their treatment of her, treatment that no one should receive in a hospital. Doesn't that go to her damages, really? It's a separate cause of action, and she brought the separate cause of action. It was a direct victim of this negligent treatment that caused her emotional distress. No expert testimony is necessary for it under the law, and she is entitled to bring this cause of action, which she has done. The negligent treatment is not immunized here. Her claim was not based upon a misdiagnosis for her negligent infliction of emotional distress. Her claim was based upon the treatment of her in the emergency department, the treatment which caused her severe emotional distress. She was told she was lying. She was told she was faking. She was told she was doing yoga poses. She was told you walked in here, you can walk out when she was unable to. She walked in there, and due to their negligent treatment of her, she was left in a wheelchair. This was a woman who the doctors were rude to. They told her they didn't believe her, that she was lying, that she was faking. Is this more than rudeness required generally when we look at complaints for the negligent infliction of emotional distress? Yes. Is this more than a little rudeness? Yes, and that was set aside here. And I believe that was set aside here. Patients being told that they're lying and they're faking when they have actual injuries, told to get out of here, being forced to stand up and then dropped to the ground. Didn't this kind of same activity occur later in the day at another hospital? Later in the day at another hospital, that physician had called the doctors. Everybody must have been having a horrible day. It must have been terrible that this kind of activity to an individual. I mean, it does sound awful. You just started to say the doctor called? One doctor called the other hospital? She presented after being discharged from Cook County, she presented to Lincoln Park Hospital. At that hospital, the attending physician called the doctor before seeing her, called the doctor at Cook County and asked about this patient. And he did not even provide a full exam to this patient. He told her she was lying, get out of here, she was faking. What's the duty, negligent infliction of emotional distress, the first element you have to show is that there's a duty. What's the duty that they have with regard to their comportment towards this patient? Is there some duty of being nice? Is there a duty to not be rude? What's the duty? There's a duty of care in the treatment of her. Was there some expert testimony that provides that you have to be nice to a patient? No, but for a negligent infliction of emotional distress thing, no expert testimony is necessary. So then where do you get it? If you don't establish this duty of niceness or a duty not to be rude, where does it come from? How do you establish that? If you don't do it by expert testimony that that's part of the standard of care for treatment, as you're saying, then where does that duty come from? Are you telling us that the appellate court should impose a duty upon the doctors of this community to be nice to people? No, there was also testimony. Or a duty to believe them? What if we told the doctors of this community that they can't question the sincerity of a patient presenting to them? What do you think the result of that would be? My question is, that's not a fair question. That's rhetorical, I guess. But my question is, where does this duty come from? Dr. Upton and Dr. Corey both testified that there was a complete lack of taking this patient seriously. And it's at a duty, in law, in Illinois, recognized for the negligent infliction of emotional distress. Let me ask, just to follow up on that, is there a case where it's been held that it was negligent to not be nice to a patient? Do you have a case that says that? Or is it, to put it in a stronger sense, is it a violation of a duty to be rude to a patient? Do you have a case that says that? I do not have a case that says that, but I do have the testimony of our two expert doctors who say that it was a violation of the standard of care to take this patient seriously. Obviously, you know. Do we really need a case that people should be nice to each other? It's like saying we need a case to define what is reasonable. People should all be nice to each other. I do think we need a case that requires that the plaintiff establish a duty. I do believe that's required of us, just as it is in the trial court. And if there is a standard of care that the bedside manner of a doctor is such and such, then we need an expert to say that not having the appropriate bedside manner is a breach of a duty of care that is owed under the law. So yes, I believe we have to find a duty. And in this case, both Dr. Upton and Dr. Corey testified that the total lack of taking this patient seriously, coupled with their diagnosis of her of a back injury, is a violation of the standard of care. And I think that is sufficient under the law. And in a negligent infliction of emotional distress case in Illinois, you don't need expert testimony, but in this case we do have expert testimony saying that their negligent treatment of this plaintiff, not only the treatment that I previously discussed of forcing her to stand up, dropping her, failing to immobilize her, but their negligent treatment in wholly taking her seriously and telling her that she was lying. I don't think that is reasonable treatment of a patient. And our experts both testified to that. And I think at a minimum there's a question of material fact which should have precluded summary judgment on this issue. Ms. Scott, anything else? No, I will reserve my five minutes for rebuttal and also stand on the arguments within my brief. Thank you. Thank you. Thank you. May it please the Court. This Court should uphold the trial court's decision to bar plaintiff's negligence claims against these defendants under the Tort Immunity Act and should uphold the trial court's decision that no material facts support a plaintiff's entitled claim against Cook County. As Your Honors touched upon and as the case law shown in Michigan Avenue, the key issues for any failure to diagnose scenario is what is the medical condition that caused plaintiff's injury? And in this case, the medical condition that caused plaintiff's injury was a spinal injury. And then the second question is when was that condition diagnosed? In this case, when she showed up to storage or ER on March 4th, that condition was not diagnosed. The only diagnosis that was reached was a back spasm and contusion. I think this case is exactly similar to Michigan Avenue where you had a patient come in. And again, that was an unfortunate case as well. A patient comes in, gets treated by the county for a breast condition. It was ruled by the county to be a fibrocystic disease. It was treated as such for a number of months. Later, sadly, it was found out to be a cancerous condition, and it was too late to treat the patient. Successfully, the patient died a year later. I know it's not – it sometimes results in – Mr. Dragan, your opposing counsel, Ms. Scott, is suggesting that their cause of action is a cause of action for the negligent treatment resulting from the misdiagnosis, that those doctors, when they treated her for the back spasms or the contusions, that that treatment was, in fact, negligent for that diagnosis. Now, is that how you envisioned the complaint? Did the complaint state that the claim was for the negligent treatment of the diagnosis of a back contusion, spasm, what have you? The plaintiff's Fifth Amendment complaint, which is the presiding one, did not say that. The plaintiff's 213F3 disclosures didn't say that. The expert testimony, which, you know, counsel Saron decided to, I think, C2260, perhaps, that I was unable to find it there. Do you agree, though, that if those were the allegations and if this were an action based upon the negligent treatment resulting from not the misdiagnosis but the treatment or that misdiagnosis was negligent, then summary judgment would have been improperly granted? Meaning, if I'm understanding Your Honor's question, is if the facts in the case were you failed to treat the back contusion appropriately and caused injury?  Yes, but that's not the facts of the case. This has suggested that the expert testimony substantiates that this action is really not related in any way to the misdiagnosis of a spinal cord injury, but actually the negligent treatment or a diagnosis of the back contusions. That misstates the record. I mean, just looking at the plain example, the plain reading of the Plaintiff's 213F3 disclosures, it says that the immobilization of the spine, the MRI, and the high dose of steroids need to be done to treat the spinal cord injury. There's nothing in the record to suggest that those things need to be done to treat the back and buttock contusion. Therefore, I respectfully disagree with counsel and say that that's not in the record. All right, so if I got this right, and I'll ask Ms. Scott when she steps up again, she said that Dr. Upton had, I thought I wrote this down correctly, at 2596, said that Dr. Upton said, upon presentation of someone having had a fall and having a back buttock contusion, should have been immobilized, should have been given a high dose of steroids, and should have been given a neurological examination. I guess we're going to have to look back in the record again. So if you're saying that's not what the record says. Yes, Your Honor, that's exactly what I was saying. All right, go ahead. Okay. I'm sorry. This record shows that the Cook County defendants diagnosed the back and buttock contusion and treated that particular condition accordingly and appropriately. Plaintiff arrived with steroid injury. Were they asked specifically any of these questions when they were deposed whether or not the treatment that was given for the misdiagnosis was a deviation of the standard of care? For the back spasm? Yes. Not for the spinal injury. There's nothing in the record to suggest that there was an inappropriate treatment for back spasm. That is not in the record. And I would suggest that if it was in the record, we probably wouldn't have brought our motion for summary judgment. If it was in the record, it would have been in the response to the motion for summary judgment. If it was in the record, it would have been in plaintiff's appellant brief and it would have been the reply. This is the first time that's been suggested and that's a mischaracterization of the record. Well, what is in the record here is the fact that the plaintiff claims that the physicians called her a fake and a fraud, basically, and they didn't believe her. And as a result of it, they only gave her pain medication and she claimed she couldn't walk and they didn't hospitalize her. I think that's what the expert is claiming should have been done, given prantosome and hospitalized. The fact that there's a misdiagnosis, that's another story. But the fact that the treatment consisted of I don't believe you and I'm just going to give you pain medication and goodbye when somebody can't walk. Well, Your Honor, first of all, I would say that when they were acting as such, if that's to be believed, which those are facts before this court, they were working under a diagnosis of back and buttock contusion. They had performed an MRI and a CT to rule out any other significant neurologic or spinal cord injury. And as Your Honors have already stated, at Lincoln Park Hospital shortly thereafter, the same diagnosis. But that came because that doctor made a phone call and already got a, you know, don't pay attention to this woman, she's, you know, whatever. So that, I mean, and that's really not significant to, you know, the issues in front of us. So I only mention that because the record indicates that she went to another hospital and actually was turned away there as well. But the real issue is, is this, was this complaint formulated to suggest that the plaintiff is seeking damages for the negligent treatment that resulted from this misdiagnosis? Or is it rather a case where the plaintiff has alleged a misdiagnosis and actually her, the experts that were called said that the, unless they said that the treatment that was given for this misdiagnosis was negligent treatment, but we have a different situation. So there seems to be a big discrepancy here today between what the complaint and the evidence shows versus what the actual cause of action was. And to your point, Your Honor, you know, I would say that the evidence that's before the complaint is the complaint that does not reference, you know, that there was a failure to treat the back contusion. And the 213F3s and the expert depositions also don't show that there was a failure to treat that condition. What they say is there was a failure to immobilize, there was a failure to perform an MRI, a failure to give high-dose corticosteroids, and that treatment is treatment for the spinal cord injury. But could there be a reading of that testimony? Is there a question of fact? Whether their testimony was a fact, really, that if someone comes in complaining of a back injury as a result of a significant fall, that the first thing that should be done is some kind of immobilization. That's, I mean, I think if that's not on the record, you know, and any time someone has a fall, they don't have to be immobilized. You know, there's football players who get hurt on the field, and they're not immobilized for, you know, hours at a time to receive an MRI. You know, in this case... If a person can't walk, they're usually immobilized. Well, this patient could walk on admission, and they did perform a CT scan, they did perform an X-ray scan, and those scans showed that they ruled out a spinal cord injury. And in this case, I think what's relevant, without going into what should have been done in terms of diagnosis, I think we have to go back to Michigan Avenue and that analysis and show that what's the condition that caused her injury, and that's a spinal cord injury, and when was that diagnosis reached? It was not reached when this patient was at Stroger's ER on March 4th. And I think for those reasons, I think this court should uphold the trial court's ruling for the Tort Immunity Act and dismiss the negligence claims against Cook County, Dr. Bischoff and Dr. Baker. Well, I also have a question as to whether the experts really ever said that if you come in and there's a misdiagnosis for a spinal cord injury, and the diagnosis is that the patient is suffering from back spasms or back or buttocks contusions, that that standard of care would require that an MRI be ordered. Now, there's more to their testimony than that, but I don't know that any of the doctors ever said anything like that. I agree with you, Your Honor. I don't know. I mean, obviously a more careful reading of the record is required because we have this vast difference between what you're saying, the complaint, and the evidence, and the 213s allege, and what the plaintiff is now arguing the cause of action is really about the negative treatment of a misdiagnosed condition. I'm sorry. You know, I don't know if the – I think this has been exhaustively brief. Yes. And I don't – I think the fact that there is no evidence to suggest that, I think, is clear. It's not in any of the briefs. What about EMTALA? EMTALA. Courts ruling on EMTALA have stressed it's not intended to be used as a federal medical malpractice statute or a medical malpractice statute in Illinois under federal law. Rather, the purpose of EMTALA is to prevent emergency rooms from refusing care to an individual just because of her financial condition or her lack of medical insurance. In this case, counsel may argue that we didn't treat this patient appropriately, but we did perform a number of examinations. She was triaged at 442. She was performed – an examination was performed at 505. Four other doctors saw this patient and performed an examination on her. Four other nurses came in and saw this patient. She was given an X-ray. She was given a CT scan. If you look at the other cases that have analyzed EMTALA, like Enamucara, sorry to mispronounce it, and McCollum, in those cases, all that was done was just a simple examination to perform vitals. And in that case, a patient was mistreated because they had a ubiquitous cord prolapse and a baby died. Another one, they misdiagnosed a bad baby, and then another miscarriage was performed. What about the testimony of either – I don't know if it's Bischoff or Bankoff, which one counsel referred to that said that he would normally, or she, whoever it is, normally order a neurological exam for a patient presenting such as this one and did not do that here? Is that a question of material fact as to whether or not there was a violation of this statute? Two responses to that. First, in the testimony she was citing, he's talking about standard of care. And as we're talking, as we know, EMTALA is not a federal malpractice statute. So that question was answered in standard of care guides. Secondly, I think what's relevant for EMTALA is all the case law that has looked at EMTALA is whether or not the hospital's policies and procedures were followed. If they were followed, then a medical screening exam was performed. If not, well, then perhaps there was a violation. In this case, the only suggestion that the policies and procedures were not followed suggests that our policy, say an emergency medical condition has to be ruled out. In this case, it was ruled out. The evidence is clear that throughout – So the focus shouldn't be on a suggestion that a neurological exam, which would otherwise be conducted, was not conducted here. In this case, I believe, you know, an MRI, a CT was performed, an X-ray was performed, and those things were done to rule out a neurologic injury. And I think the fact that the policies and procedures were not violated is what meets the criteria of EMTALA. Did you want to comment on the negligence? Well, I just was going to follow up on that. Ms. Scott said that Dr. Bancroft's own testimony provides sufficient evidence in the record that this patient was treated differently than was his ordinary course of treatment. And she cited a spot in the record in 2660 and 1 that it would ordinarily be his procedure to specifically perform a neurological exam. And there's no evidence that he did that at all. And that question was under the guise of if a spinal cord injury was considered. And in this case, you know, he had already ruled that out because an X-ray and CT showed that the spine was clean. Okay, thank you. Thank you. Did you want to talk about negligent infliction of emotional distress? I mean, what I would say is that the... Is there a duty to be nice? Well, Section 1, there is no duty to be nice. The negligent infliction of emotional distress case law, there is no case that says a physician has to be nice. I mean, isn't that a shame that there's no duty to be nice? Well, you know, I don't think we're talking here about what should or should not be. I think we're talking about what's required under the law. You know, I got a cup of coffee the other day at a coffee shop. The person who gave me the coffee was not nice to me, okay? Does that mean that I could sue that person? I can't sue that person because that person doesn't have a duty to be nice to me. She should have been nice to me, but she wasn't. So where's the lawsuit? And in this case, we have physicians who were acting under the guise that this patient did not have a spinal cord injury and we're treating her accordingly. Perhaps it was rude, but there's no duty to not be rude by a physician in Illinois law. No, but we hope that at least... Well, is there a question of the fact that they don't treat everybody as rudely as they treat this woman? That's it. You know, emergency room doctors are under a lot of pressure, no question about it. And sometimes I'm sure that the pressure impacts their bedside manner. On the other hand, Ms. Scott told us that Dr. Corey and Dr. Upton did testify that their failure to take her seriously was a breach of the standard of care. In that case, if she's saying it's a breach of the standard of care, that goes right back to the Tort Immunity Act. And if that is a standard of care by a doctor, which... Well, I don't think that's what she was saying, though. Because what she was saying, I know that's your argument in your brief, but what she was saying is just a recast of the medical malpractice claim. But what she's saying is that in the course of treatment, even after the misdiagnosis, what she's saying is that in the course of treatment, Dr. Corey and Dr. Upton are saying that the failure to take her seriously was a breach of care. If she could tell me if I'm not encapsulating that right. That may have just been said, but the Fifth Amendment complaint shows that the allegations of negligence for the negligent infliction of emotional distress claim and the allegations of negligence as to the medical malpractice claim were the exact same. So that's how the case was defended. That's what's before the court, and I would respectfully say that in this case, negligent infliction of emotional distress has not been shown. And I would also add that the Tort Immunity Act doesn't, in the failure to diagnose, that immunity is not just for medical malpractice claims. If it was, then any plaintiff could circumvent the Tort Immunity Act by pleading it as a different tort. And there's been no case law that says that the Tort Immunity Act should only apply to medical malpractice claims. It would apply equally to this negligent infliction of emotional distress claim, especially considering that all the allegations of conduct in the Fifth Amendment complaint are identical between the NIED claim and the medical malpractice claim. And for those reasons, I think this court should uphold the ruling of the trial court as it properly ruled that plaintiff's negligence claims were barred by the Tort Immunity Act and it properly ruled that no material facts would support plaintiff's intellectual claims against Cook County. Thank you. In response to counsel's comments that the Fifth Amendment complaint and our 213s do not support the negligent treatment allegations, I would refer you to pages 2546-2580 and 2647-2729 in the record. That sets forth... 2647-2729. Thank you. Did you get the first one, Your Honor? I did. Okay. And that, if you look at the complaint and our 213 F3 answers, clearly sets forth the criticisms of the defendants in this case are for the negligent treatment of the plaintiff and for their diagnosed condition, which was the back contusion related to trauma. They did not treat this back and buttocks contusion appropriately and they treated it negligently. And it was this treatment that caused the plaintiff harm. And counsel briefly stated that they did perform an MRI and I think that was a misstatement. There was not an MRI performed in this case. Under that last kind of umbrella argument that you made. Correct. Do these other cases then have any meaning? Because really, in any case, if you have a misdiagnosis and then you have treatment for that, couldn't one always say that that treatment, the negligent treatment, caused the subsequent damages for the misdiagnosis? This isn't a misdiagnosis. Well, it is. I mean, there's no question. There's no question. The record supports that the two experts said, without any question, that she was misdiagnosed. So, I mean, to say that's not saying that that's what your complaint is about. I'm not saying that. But there's no question that the two experts gave an opinion clearly that this diagnosis of the back contusions was inappropriate, was wrong, and that the diagnosis should have been something else. But you're arguing that they also said that the diagnosis that they made, that there was negligent treatment for that. Correct. So I think in any case you could say then that the rule is swallowed up because you have a misdiagnosis, then you have the negligent treatment of the misdiagnosis, and that negligent treatment actually caused the damages, which at the end of the day are really because the diagnosis was wrong in the first instance. There seems to be no rule anymore. Well, I think the Michigan Avenue case where there is no treatment at all and the treatment that was rendered for the diagnosis that they made in regards to the severe abdominal pain and spontaneous miscarriage, that treatment did not cause harm. That's the difference between Michigan Avenue and our case. That's the difference between the Willis case and our case. In those cases, the treatment that they rendered to the diagnosis made, even though they had a misdiagnosis, caused no harm. In our case, the treatment rendered to the diagnosis made caused harm. Dr. Upton, at page C2596 of the record, stated that failing to put the plaintiff in an immobilizer and stabilize the spine and back causes a stretch or bend within the spinal column that can both increase the swelling and cause neurologic symptoms. This plaintiff walked into the emergency department. He said that, but you're contending that he said that in the context of the misdiagnosis, that the treatment that they gave for the misdiagnosis was entirely improper. No. The treatment given for the diagnosis made was improper. Was improper. The treatment given for the diagnosis of the back contusion was improper. Not the misdiagnosis. It's not founded in the misdiagnosis. I think that if your representation of the record and the expert testimony bears that out, then I think summary judgment was improperly granted. If, however, the expert testimony was as the county is arguing, then I think there's certainly a good chance that the summary judgment entered was proper. So it really depends on a close and careful and honest reading of what those doctors truly said. That's really what the case boils down to at this point. Well, I think the county is arguing that at the outset, when the initial diagnosis was made, that they ruled out a neurological injury. Now, if they ruled out a neurological injury, that's part of the diagnosis, and the subsequent treatment flows from that diagnosis. But you would disagree, I assume, that that's the case. Yes. Our criticism from the crux of our case is that they diagnosed this back contusion related to a traumatic fall. In their own x-ray order, the reason given for doing an x-ray was trauma. This is a woman with a traumatic fall with a back injury that they diagnosed. And the treatment of their diagnosis was negligent and caused harm. This woman walked into the hospital for the emergency department with no neurologic symptoms. Because of their negligent treatment of their diagnosed condition, because of their failure to immobilize her and their negligent treatment and sitting her up, standing her up, having her move around and not moving, it caused this woman harm. It caused swelling, and it caused this woman harm. They failed to stabilize this woman, and it was a negligent treatment of the diagnosed condition. And briefly, in regards to... But is that the case even if they ruled out neurological injury? I mean, if they ruled out neurological injury, is there anything that they did that was wrong? Yes. They have a back injury, and the record does not support that they ruled out neurologic injuries. Counsel stated that they did a CT and x-ray, and that ruled out a spinal cord injury. Their own doctors and their own experts testified that a CT and x-ray only ruled out bony abnormalities. That's not ruling out a spinal cord injury. So that is not reflected by the evidence in the record. What caused her injury was the negligent treatment of the back and buttock contusion. Briefly, I'd like to address the negligent infliction of emotional distress. Under the Brackett v. Galesburg Clinic case, to state a cause of action for the tort of negligent emotional distress, a plaintiff must allege that the emotional distress arose out of the negligent acts of the defendant. That is what was done here. Our complaint sets that forth. Also, the Corgan v. Muehling case supports that position. In determining whether to impose a duty upon a defendant in the Corgan case, the court looks at various policy considerations, such as the likelihood of harm, the gravity of injury, the burden of guarding against the injury, and the relationship with the parties. I think that we satisfy that. We have a patient coming into an emergency department seeking treatment from these doctors in severe pain. They begin treating her, and they negligently treat her. They then fail to take her seriously. They tell her she's lying. They force her to stand up, allowing her to fall and drop her on the ground. They have her walking around this emergency department. One of the elements of the case that you just cited, and it's recognized, is that in imposing a duty, one of the things you have to look at is what is the burden that's being imposed upon the person or entity that is going to be subject to this duty. So what about the argument that the county makes that it would be unduly burdensome to impose a duty upon the medical profession to not question the sincerity of a patient, not to be rude, things like that? I think that it's not an undue burden. Since there's no case, what you're asking this court to do is to set a precedent that a doctor can be sued because he or she breached this duty to take the patient seriously and to not question her sincerity and to not be rude. And not just that, and that they refuse to give her care. They're forcing her out of the ER. She didn't sign the discharge papers because she was fighting to get care here. Her own boyfriend came in. There was testimony from Doug Kaiser within the record that was cited within our brief that he was begging them to keep her, that she clearly has gotten worse. She can't stand. She needs to be admitted. She needs to be treated. And they just tell her she's lying, she's faking. I think it's not an undue burden to place upon physicians. But doesn't that go back to what Justice McBride said, that you're at risk of swallowing the rule? Because they made a diagnosis that this is what she had and that she didn't need any further treatment. And as Justice McBride described, it turned out to be wrong. But they made this diagnosis and they said, we're not going to treat you any further. And you're saying, well, their refusal to treat her inflicted her with emotional distress. Well, I mean, doesn't that go back to the fact that aren't they immune for making that decision that she doesn't need any further treatment? And it's not just that treatment. It's the treatment that I discussed within the toward immunity claim in regards to the medical negligence. The totality of the treatment here and the treatment that was negligent that I stated all led to her severe emotional distress in this case. Their negligent treatment caused this plaintiff harm. It wasn't just because they rendered treatment and chose to stop treatment that they felt that was sufficient. That doesn't immunize them from negligent treatment. They negligently treated this plaintiff, and this plaintiff suffered harm as a result of their negligent treatment. And briefly, I wanted to just distinguish the McCollum and Anna Dumica cases. Both of these cases, under EMTALA, there was no dispute that there was no diagnosis  That's the difference. In this case, there is our position that the emergency medical screening was not done appropriately under their policies. They never diagnosed nor ruled out an emergency medical condition. So that distinguishes this case from the McCollum and Anna Dumica cases. And in regards to Dr. Bankoff's testimony, counsel said that it was in regard to questioning of the standard of care. He was asked, and the record reflects that he was asked, what was his custom and practice? Not what was the standard of care. What was his own custom and practice? But it's policy and procedure, not his custom and practice that is at play here. It is absolutely not what his custom and practice is. That's not the statute. The statute is policy and procedure of the hospital, not Dr. Bankoff. Which encompasses medical screening. And he's engaged in the medical screening process to either diagnose or rule out an emergency medical condition, which he did not do. He also treated this patient differently as a part of the medical screening by not conducting a neurologic exam, nor documenting this neurologic exam prior to discharge. So he was not discussing the standard of care. He was, and I believe his testimony coupled with Dr. Corey's testimony and the evidence throughout the record satisfies, at a minimum creates a question of fact that would preclude summary judgment in EMTALA. I thank you for your time, and we also will incorporate all of our arguments from our briefs, and we respectfully request this honorable court reverse the trial court's granting of summary judgment and remand for trial. Thank you, Ms. Katz. Thank you. The court thanks counsel for both sides for their efforts in regard to their excellent briefs and arguments, and we will take this matter under advisement. Thank you very much.